*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD GILBREATH,

        Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellee.

UNPUBLISHED
December 3, 2019

No. 344344
Wayne Circuit Court
LC No. 17-006932-CZ

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals from an order of the circuit court granting summary disposition in favor of defendant on plaintiff's claim for personal injury protection benefits under a no-fault automobile insurance policy issued by defendant. We affirm.

According to plaintiff, he was injured in an automobile accident on June 12, 2015, when his vehicle was rear-ended at a high rate of speed on I-75. He alleges that he suffered serious injuries in the accident, resulting in medical bills of approximately $400,000. Defendant has denied the claim on the basis of fraud. Defendant hired a private investigator who obtained surveillance video of plaintiff engaged in activities that defendant argues were inconsistent with the injuries and limitations claimed by plaintiff. Plaintiff denies that the activities observed by the investigator were inconsistent with plaintiff's claims to defendant. The trial court disagreed and granted defendant's motion for summary disposition.

On appeal, plaintiff presents two arguments. First, defendant has waived the fraud defense by failing to plead fraud in its answer. Second, that even if properly pled, there is a genuine issue of material fact regarding whether plaintiff presented a fraudulent claim and, therefore, summary disposition under MCR 2.116(C)(10) was improper. We disagree on both issues.

Plaintiff's first argument, that defendant failed to plead fraud, is easily dealt with. Defendant filed with its answer a number of defenses, including the following:

14. Plaintiff's claim is, in whole or in part, fraudulent or so excessive that it has no reasonable foundation, which entitles Defendant to an award representing an attorney fee for the cost of defending this action pursuant to MCL 500.3148(2).

\* \* \*

23. Plaintiff, or those acting in concert with Plaintiff, have misrepresented material facts in connection with the procurement of the policy or Plaintiff's claim under the policy, thereby voiding the policy *ab initio* and any applicable coverage under it.

24. Plaintiff misrepresented material facts, either innocently or intentionally, at the time that Plaintiff applied for automobile insurance coverage with Defendant and, therefore, Plaintiff's policy is void from its inception, or *ab initio.*

While defendant may not have used the label "fraud," it clearly met any obligation to plead fraud at the time of its answer. See MCR 2.111(F)(3).

Accordingly, we turn to the question whether the trial court erred in concluding that there was not a genuine issue of material fact regarding fraud. We review the grant of summary disposition de novo. *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014). In evaluating whether a genuine issue of material fact exists, a court must view the evidence in favor of the nonmoving party and determine whether reasonable minds might differ. *Id.*

We conclude that the present case is controlled by the decision in *Bahri*. Like in *Bahri*, the insurance policy issued by defendant had a clause denying recovery in the event of fraud. And like in the case at bar, in *Bahri*, the defendant had surveillance evidence of the plaintiff engaged in activities inconsistent with her claimed limitations. Specifically, she was observed lifting, carrying items, bending, driving, and doing various errands on dates that she claimed a need for replacement services for those items. *Id.* This Court concluded that that was sufficient to justify a grant of summary disposition:

This evidence belies plaintiff's assertion that she required replacement services, and it directly and specifically contradicts representations made in the replacement services statements. Reasonable minds could not differ in light of this clear evidence that plaintiff made fraudulent representations for purposes of recovering PIP benefits. Stated differently, we find no genuine issue of material fact regarding plaintiff's fraud. See *Mina* [*v Gen Star Indemnity Co,* 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997)]. Because plaintiff's claim for PIP benefits is precluded, intervening plaintiffs' claim for PIP benefits is similarly barred, as they stand in the shoes of plaintiff.

The trial court properly granted defendant summary disposition. [*Bahri*, 308 Mich App at 426.]

In his deposition, plaintiff testified that he was not taking care of his lawn or his house; rather, his daughter was. He also indicated that the city came and mowed the lawn "a couple of times." In fact, he testified that the first that his lawn was mowed after the accident was when the city came out and mowed it and that was during the month of July. He further stated that he had not done "anything big" around the house after the accident. Indeed, in response to specific questions, plaintiff denied doing any of the following activities following the accident: cleaning the house, tending to the garden, and mowing the lawn. He further testified that he lived with his ex-wife for three months after the accident and that she helped him "every day."

Plaintiff had also signed an affidavit claiming that from the date of the accident in June until the end of August, he required attendant care services for four hours per day, seven days per week. Also submitted was a claim for services provided by plaintiff's ex-wife for July 2015, which not only included a claim for services on July 2, but also for lawn mowing on July 4 only two days after defendant's investigator observed plaintiff himself mowing the lawn. Indeed, the claim includes bills for lawn mowing once a week for the entire month of July.

Plaintiff attributes the inconsistencies to memory problems caused by his medications. He further states that he was able to mow the lawn on July 2, 2015, because of a pain management injection he had received and that mowing the lawn was necessary due to demands by the city. But that explanation is inconsistent with his claim of a need for replacement services for various tasks that day by his ex-wife as well as the claim for his ex-wife to provide replacement services two days later to mow the lawn that had just been mowed.

Additionally, one of plaintiff's treating physicians, Dr. Padula, testified that he attributed plaintiff's back injury to the accident and that the basis for that opinion was plaintiff's statement to him that his back pain did not commence until after the accident. Defendant, however, has produced medical records indicating that plaintiff, in fact, had taken a significant amount of painkillers,[1] for several years preceding the accident. Indeed, the records reflected from 2006 through June 1, 2015 (two weeks before the accident), over 13,000 doses of various pain killers.

In light of the evidence produced by defendant, as well as this Court's holding in *Bahri*, we conclude that the trial court did not err in granting summary disposition in favor of defendant.

Affirmed. Defendant may tax costs.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan

---

[1] Principally, but not exclusively, hydrocodone.